UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

| | | |
|---|---|---|
| JOHN WOLFENBARGER #205217, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:05-cv-82 |
| | ) | |
| v. | ) | HON. ROBERT HOLMES BELL |
| | ) | |
| JOHN PERRY, et al., | ) | |
| | ) | |
| Defendants. | ) | **OPINION** |
| | ) | |

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) ("PLRA"), "no action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Because Plaintiff has failed to demonstrate exhaustion of available administrative remedies, the Court will dismiss his complaint without prejudice.

**Discussion**

I.      Factual allegations

Plaintiff is presently incarcerated at the Ionia Maximum Correctional Facility. In his *pro se* complaint, he sues Defendants Corrections Officer John Perry, Corrections Officer Jim Chipman, Corrections Officer Kulie, Corrections Officer Mark Joyal, Corrections Officer J. LeChance, Corrections Officer Smith, Sergeant Hay, Sergeant McCellum, Corrections Officer M. Reddinger, Resident Unit Manager Jondreau, Resident Unit Manager Lesatz, Case Manager Pertu, Assistant Deputy Warden W. Luetzow, Deputy Warden D. Edlund, Mailroom Supervisor T. Ansell,

Grievance Coordinator B. Smith, Inspector Burnett, Warden Tim Luoma, Corrections Officer Nagele, Corrections Officer P. Perry, and Resident Unit Manager G. Ordiway, all of whom are employed by the MDOC at the Baraga Maximum Correctional Facility (AMF). In addition, Plaintiff names MDOC Regional Prison Administrator as a Defendant in this case.

Plaintiff was transferred to AMF on June 10, 2003. Plaintiff claims that while he was incarcerated at AMF, Defendants subjected him to a variety of misconduct because of his high profile felony convictions. Plaintiff alleges that he over heard Defendant Chipman make the following comments in the presence of Plaintiff and other prisoners: "high profile case . . . Wolfenbarger . . . children . . . that piece of shit needs his ass kicked . . . that baby killer will suffer . . . a bullet to his head." Whenever Defendants Chipman and John Perry worked on Plaintiff's unit, they would shake down his cell and would frequently destroy his property. Defendants Perry and Chipman told Plaintiff that he would be placed in the "hole," and that he would be killed. In addition, Defendants Perry and Chipman subjected Plaintiff to various threats of injury and death on numerous occasions, telling Plaintiff that he should not file grievances on them or complain about them to prison officials.

Plaintiff alleges that Defendants Perry and Kulie wrote false misconduct tickets on him in order to undermine Plaintiff's ability to obtain redress for his grievances. On December 2, 2003, Plaintiff received a hearing on the misconduct tickets, but Plaintiff was not allowed to submit his written statement into the record. In addition, some of the witnesses were not questioned, including Defendant Corrections Officer Smith and Defendant Hay, which prevented Plaintiff from raising a retaliation claim. Sometime after Plaintiff was found guilty of both misconducts, he was interviewed by Defendant Burnett who told Plaintiff that he had spoken to staff and to Plaintiff's

boss, and found that he was not a problem. Defendant Burnett told Plaintiff that he need not worry about being killed by officers at AMF, but that he should expect harassment because they wanted Plaintiff dead due to his felony convictions. Defendant Burnett stated that other prisoners would also feel animosity towards Plaintiff based on his convictions. Defendant Burnett further stated that Defendants Perry and Chipman would not be working in Plaintiff's housing unit, and that Plaintiff should tell his mother that the situation was under control so that she need not write anymore.

In November of 2003, some of Plaintiff's personal property was taken and outgoing mail to his attorney was interfered with after Defendant Jondreau refused to allow Plaintiff to seal his envelope. Plaintiff was kept in a cell with no hot water, his store orders were not submitted, and Plaintiff was verbally harassed by Defendant LeChance. Plaintiff further states that Defendants interfered with his incoming and outgoing mail. Plaintiff claims that he spoke to psychologists on two separate occasions because of staff threats to his safety. Plaintiff also sent letters to the Baraga Postmaster, the Michigan State Police, his attorney, and Defendants Luoma and Edlund complaining of staff mistreatment.

On March 7, 2004, Defendant Reddinger wrote a false misconduct ticket on Plaintiff and placed him on food loaf in retaliation for Plaintiff's use of the grievance procedure. Defendant Reddinger also got on the unit P.A. system and announced, "227 Wolfenbarger, this is the start of a long relationship so you better get ready to suffer." Plaintiff's attorney visited him on March 20, 2004, concerning appellate issues. Plaintiff told his attorney about the threats he was receiving, and showed her carbon copies of the letters he had sent to her. Plaintiff's attorney indicated that she had never received various letters and agreed to contact state officials in an effort to have Plaintiff

transferred to another facility. Upon exiting the prison, Plaintiff's attorney was harassed and threatened by staff, including Defendant Jondreau, who was the acting warden.

On March 29, 2004, Plaintiff's attorney faxed 21 pages of grievances and complaints to Defendant MacMeekin's office. Defendant Burnett subsequently interviewed Plaintiff regarding the complaints. During the interview, Defendant Burnett angrily told Plaintiff not to file any further complaints because he was "handling" the matter. Plaintiff then asked why his grievances were being ignored, why his mail was being intercepted, why his presentence investigation report was being read over the P.A. system, why he was being refused showers and yard, and why food items were being removed from his tray right in front of Plaintiff's cell. Defendant Burnett stated that Plaintiff was just making things up in order to obtain a transfer and that he was not going anywhere. Plaintiff responded by asking whether he was just going to be returned to the general population where the inmates were threatening to butcher him because of the inappropriate information broadcasted over the P.A. system. Defendant Burnett then told Plaintiff that he would recommend to the warden that Plaintiff take a polygraph and that any problems would be dealt with as they arose, but that for the time being Plaintiff should just stop with the grievances and complaints to his attorney.

On April 5, 2004, Plaintiff was told to go to Defendant Jondreau's office, but Plaintiff refused because he knew that Defendant Jondreau had been involved in assaulting other prisoners. Defendant Jondreau subsequently came to Plaintiff's cell and threatened Plaintiff for making complaints about the handling of his legal mail and grievances. On April 12, 2004, Defendant Luoma phoned Plaintiff's attorney, Marla R. McCowan, and told her that Plaintiff was a liar, and that there had been no staff misconduct against Plaintiff. On May 6, 2004, Defendant Chipman told

Plaintiff that he planned on poisoning his food.  On June 5, 2004, Defendant Reddinger called Plaintiff a "baby killing bitch," and warned Plaintiff that he would not be in the general population for long.  In addition, Defendant Reddinger stated, "Hey, everyone, Wolfenbarger in 135 is in here for raping and killing little kids.  Make sure and give him a big AMF welcome when you see him in G.P."  The comments caused catcalls and threats by prisoners towards Plaintiff.

Plaintiff alleges that on June 7, 2004, he sent a letter to the Director's office, but received no response.  On June 11, 2004, Plaintiff wrote to Defendant Edlund and requested an interview so that he could explain his fears.  Defendant Luetzow subsequently spoke to Plaintiff, but apparently relayed none of Plaintiff's fears to Defendant Edlund.  Instead, Defendant Luetzow merely told Defendant Edlund that Plaintiff was requesting a routine transfer.  On July 10, 2004, Plaintiff was threatened by Defendant Perry.  When Plaintiff was interviewed on his subsequent grievance, Defendant Lesatz told him that nothing would be done unless the harassment was captured on video.  Defendant Lesatz told Plaintiff that he should be the bigger man and ignore the harassment.

On August 16, 2004, Plaintiff submitted a request for a legal agreement with another prisoner, which was denied because that prisoner was a "legal writer," and not allowed to enter into such agreements.  Plaintiff believes that the denial was actually based on the fact that the other prisoner was a witness to the false misconducts written on Plaintiff by Defendants Perry and Kulie.  Plaintiff claims throughout his complaint that he wrote numerous grievances concerning interference with his mail, harassment, and threats by Defendants, but that he frequently received no response to his grievances.  On October 6, 2004, Defendant John Perry, while in the presence of Defendant Paul Perry, called Plaintiff a "motherfucker" and told Plaintiff that it would do him no good to write a

grievance because he was going back to the "hole." Defendant McCellum also observed this exchange and laughed about it. Plaintiff called his mother, who contacted Defendant Edlund and explained the situation. Defendant Edlund subsequently told Plaintiff that she had investigated the matter and concluded that Plaintiff was lying. Defendant Edlund warned Plaintiff to cease writing grievances. In reviewing Plaintiff's grievance on this issue, Defendant Ordiway told Plaintiff that he needed to learn how to "do time."

On October 9, 2004, Plaintiff was placed in segregation for allegedly threatening to kill Defendant Chipman. On October 21, 2004, Defendant Nagele threatened Plaintiff over the P.A. system, stating that he had "something in store" for Plaintiff. Several hours later, Defendant Joyal wrote a false misconduct on Plaintiff for possession of smoking material. A few days later, Defendant Joyal called Plaintiff a "baby killer" and told Plaintiff to make sure he enjoyed his detention because it was going to continue as long as he was at AMF. Plaintiff wrote to the ACLU, State Representative Triette E. Lipsey Reeves, and to his attorney, as well as to Defendants Luoma and Edlund, in order to complain about Defendant Joyal, but to no avail. Plaintiff also claims that he filed grievances on the matter.

Plaintiff claims that Defendants' conduct constitutes a violation of his rights under the First, Eighth and Fourteenth Amendments. For relief, Plaintiff requests compensatory, punitive and nominal damages, as well as declaratory and injunctive relief.

II. <u>Lack of exhaustion of available administrative remedies</u>

Plaintiff has failed to sufficiently allege and show exhaustion of available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies.

*See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter*, 534 U.S. at 516; *Booth*, 532 U.S. at 741. A district court must enforce the exhaustion requirement sua sponte. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir.), *cert. denied*, 525 U.S. 833, 119 S. Ct. 88 (1998); *accord Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999).

A prisoner must allege and show that he has exhausted all available administrative remedies and should attach to his § 1983 complaint the administrative decision disposing of his complaint, if the decision is available.[1] *Brown*, 139 F.3d at 1104. In the absence of written documentation, the prisoner must describe with specificity the administrative proceeding and its outcome so that the court may determine what claims, if any, have been exhausted. *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir.), *cert. denied*, 531 U.S. 1040, 121 S. Ct. 634 (2000). A prisoner must specifically mention the involved parties in the grievance to make prison officials aware of the problems so that the prison has a chance to address the claims before they reach federal court. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001).

Plaintiff's claims of harassment, threats, and retaliation are the type of claims that may be grieved. *See* MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ E (may grieve "alleged violations of policy and procedure or unsatisfactory conditions of confinement") (effective Nov. 1, 2000); ¶ II (may grieve brutality and corruption by prison staff) (effective Oct. 11, 1999 and

---

[1] To assist prisoners in meeting this requirement, this Court advises prisoners to attach copies of documents evidencing exhaustion in its form complaint. The form complaint, which is required by local rule, is disseminated to all the prisons. *See* W.D. MICH. LCIVR 5.6(a). Plaintiff has chosen to forego use of the form complaint in this action.

November 1, 2000); ¶ J (may grieve acts of reprisal for using the grievance process or for assisting others in filing grievances) (effective Oct. 11, 1999 and Nov. 1, 2000).

The burden to allege and show exhaustion belongs to Plaintiff. *See* 42 U.S.C. § 1997e(a); *Knuckles El*, 215 F.3d at 642; *Brown*, 139 F.3d at 1104. This requirement is "so that the district court may intelligently decide if the issues raised can be decided on the merits." *Knuckles El*, 215 F.3d at 642. Plaintiff states that he filed numerous grievances and attaches a number of grievances to his complaint as exhibits. A review of the record shows that Plaintiff filed step I grievances on a number of the named Defendants. However, Plaintiff only filed step III grievances on Defendants John Perry, LeChance, Jondreau, Luetzow, Ansell, Burnett, and P. Perry. A plaintiff must pursue all levels of the administrative procedure before filing an action in federal court. *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("While we recognize that plaintiff made some attempt to go through the prison's grievance procedures, we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed."). If the grievant does not receive a timely Step I response, the grievant may appeal to Step II within five business days after the date the response was due. MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ CC (effective 4/28/03). In addition, if the grievant does not receive a timely Step II response, the grievant may appeal to Step III within ten business days after the date the response was due. MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ GG (effective 4/28/03). Therefore, Plaintiff's claim that he did not receive responses to a number of his grievances does not excuse his failure to pursue the grievances through step III.

Because Plaintiff's complaint contains both exhausted and unexhausted claims, the Court will dismiss his action pursuant to the "total exhaustion" rule. Under the total exhaustion rule,

the presence of an unexhausted claim results in the dismissal of the entire action. *Jones Bey v. Johnson, et al.*, ___ F.3d ___, No. 03-2331, slip op. at 4-6 (6th Cir. Apr. 27, 2005). Dismissal of this action without prejudice is appropriate when a prisoner has failed to show that he exhausted available administrative remedies. *See Freeman*, 196 F.3d at 645; *Brown*, 139 F.3d at 1104; *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997). Dismissal for failing to exhaust available administrative remedies does not relieve a plaintiff from payment of the civil action filing fee. *Omar v. Lesza*, No. 97 C 5817, 1997 WL 534361, at *1 (N.D. Ill. Aug. 26, 1997). Accordingly, the Court will dismiss Plaintiff's action without prejudice.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court will dismiss Plaintiff's action without prejudice because he has failed to show exhaustion as required by 42 U.S.C. § 1997e(a).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $255 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $255 appellate filing fee in one lump sum.

A Judgment consistent with this Opinion will be entered.

Date:  May 23, 2005              /s/ Robert Holmes Bell
                                 ROBERT HOLMES BELL
                                 CHIEF UNITED STATES DISTRICT JUDGE